**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24-cr-9 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| JALEN MITCHELL, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Jalen Mitchell's Motion to Dismiss Indictment. (ECF No. 22). Defendant alleges that 18 U.S.C. § 922(o)—the statute under which Defendant is charged in this case—is unconstitutional on its face and as applied to him under current Supreme Court precedent. The Government responded in opposition, (ECF No. 23), and Defendant has filed a reply in support, (ECF No. 24). For the following reasons, Defendant's Motion is **DENIED.**

**I.   BACKGROUND**

On January 9, 2024, a federal grand jury indicted Defendant for illegal possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (ECF No. 3). The Indictment alleges that Defendant:

> did knowingly and unlawfully possess a firearm as defined in Title 26, United States Code, Section 5845(a)(6), that is, a machinegun within the meaning of Title 26, United States Code, Section 5845(b), and more particularly described as three select fire auto-sears and/or "glock switches," which is a part, or combination of parts, designed and intended solely and exclusively for use in converting a weapon into a machine gun, in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

(*Id.* at PageID #7). The Indictment also includes a demand that Defendant forfeit the firearms at issue. (*Id.* at PageID #8).

On April 22, 2024, Defendant filed the instant motion to dismiss. (ECF No. 22). Defendant first argues that § 922(o) is unconstitutional on its face, primarily citing the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). (*Id.* at PageID #75–82). He contends that: (i) machineguns qualify as "Arms" protected by the Second Amendment; (ii) machineguns are not "dangerous and unusual"; and (iii) mere possession of a machine gun cannot be exempted from Second Amendment protections. (*Id.*). Defendant then argues that § 922(o) is unconstitutional as applied to him. (*Id.* at PageID #82). In response, the Government argues that machineguns fall outside the plain text and scope of the Second Amendment under current Supreme Court precedent, as well as Sixth Circuit binding authority in *Hamblen v. United States*,[1] which was not overruled by *Bruen*. (ECF No. 23, PageID #88–94). It alternatively argues that the regulation of machineguns is supported on historical grounds. (*Id.* at PageID #96–98). Finally, the Government argues that Defendant's as-applied challenge should be rejected. (*Id.* at PageID #98–100).

**II.     MOTION STANDARD**

Defendant's Motion is governed by Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which provides that a criminal defendant may move to dismiss an indictment for the Government's "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L Ed. 2d 590 (1974). The Court must take the

---

[1] 591 F.3d 471 (6th Cir. 2009).

indictment's factual allegations as true and decide only whether the indictment is "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956).

### III. DISCUSSION

#### A. Facial Challenge

Defendant makes a facial challenge to 18 U.S.C. § 922(o), which prohibits possession of machineguns. The indictment charges Defendant with unlawful possession of three "glock switches," also known as glock conversion devices or auto sears. (ECF No. 7, PageID #7). The National Firearms Act defines a "machinegun" as any gun that can shoot more than one shot "by a single function of the trigger." 26 U.S.C. § 5845(b). Glock switches are considered machineguns under federal statute because they are a part which can transform a firearm into a machinegun. *See* 26 U.S.C. § 5845(b) (defining a machinegun to include "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun"); ATF Ruling 81-4, 27 C.F.R. § 479.11.

The Second Amendment of the Constitution provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In recent decades, the Supreme Court has interpreted the Second Amendment as codifying an individual person's "right to possess and carry weapons in case of confrontation" unrelated to militia service. *Bruen*, 597 U.S. at 4 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). *See* Adam Winkler, *Gun Fight: The Battle Over the Right to Bear Arms in America* 95 (2013) (explaining that the Second Amendment was understood as a mechanism to keep the federal government from disarming militias until the 1960s, when scholars began advancing the now-embraced "individual rights" theory).

In *Bruen*, the Supreme Court established a new two-step framework for deciding the constitutionality of gun laws: first, the district court must decide whether the plain text of the Second Amendment covers an individual's conduct. *Bruen*, 597 U.S. at 18. If the Second Amendment's text covers a person's conduct, then the law is presumptively unconstitutional, and the Government has the burden of demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individuals' conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

At step one of the *Bruen* framework, the Court must determine whether § 922(o) bars conduct protected by the plain text of the Second Amendment. Because § 922(o) clearly implicates the rights of "the people," the question before the Court is whether the "right to keep and bear Arms" encompasses possession of a machinegun. The Court finds that it does not and therefore § 922(o) governs conduct outside the scope of the Second Amendment.

The Supreme Court has consistently held that the Second Amendment's plain text does not cover the keeping and carrying of "any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21. Instead, the Second Amendment's protections extend to "Arms" that are "in common use at the time" and excludes those which are "dangerous and unusual." *Id.* at 21; *Heller*, 554 U.S. at 627. In *Bruen*, the Supreme Court specifically determined that a New York licensing scheme for concealed-carry permits was unconstitutional because "it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 597 U.S. at 70–71. *Bruen* explicitly affirmed the holdings in *Heller*

4

and *McDonald v. Chicago*² that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 9–10.

Defendant contends that mere possession of a machinegun is protected by the Second Amendment because *Bruen* clarified that the exemption of "dangerous and unusual weapons" solely applied to instances where persons were "bearing arms to terrorize the people." (ECF No. 22, PageID #81–82). The Court finds this argument unavailing. First, Defendant is misconstruing the holding in *Bruen*. The *Bruen* Court was not determining what types of weapons a person could possess. It was instead focused on determining what conduct was protected by the Second Amendment, in the context of weapons that were undisputedly protected under the Second Amendment (handguns). The majority opinion stated that, "[u]nder the common law, individuals could not carry deadly weapons in a manner likely to terrorize others." *Bruen*, 597 U.S. at 59. Defendant's reliance on this dictum is misplaced because it specifically refers to "deadly weapons"—a description that would generally apply to all firearms protected under the Second Amendment but does not apply to the "dangerous and unusual weapons" referenced under *Heller*. Second, the Supreme Court, in its own words, did not overrule *Heller* or *McDonald* nor any of the reasonable restrictions and regulations discussed in those opinions. *See id.* at 10, 30–31 ("Having made the constitutional standard endorsed in *Heller* more explicit, . . . ."); *id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[A]s *Heller* and

---

² 561 U. S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

5

*McDonald* established and the Court today again explains . . . the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

In *Heller*, the Supreme Court explicitly rejected the proposition that the National Firearms Act's restrictions on machineguns were unconstitutional; first implying that the possession of a machine gun was not an "ordinary self-defense need" and then further explaining that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizen for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 624–25. The Supreme Court has consistently held that the Second Amendment does not extend to "dangerous and unusual weapons." *See id.* at 624; *United States v. Miller*, 307 U.S. 174, 182, 59 S. Ct. 816, 83 L. Ed. 1206 (1939).

Defendant argues that the Supreme Court has never specifically stated that machineguns are "dangerous and unusual weapons" and that the discussion in *Heller* concerning such weapons was merely dictum addressing a hypothetical argument. (ECF No. 22, PageID #77–78). The Court finds this argument unpersuasive because, after *Heller*, the Sixth Circuit explicitly held that the Second Amendment does not authorize the unlicensed possession of an unregistered machinegun. *See Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009). As recognized by district courts in this circuit, this decision is still binding because nothing in *Bruen* can be reasonably understood to have overtured or disturbed the holding or the underlying reasoning in *Hamblen*. *See United States v. Smith*, No. 23-28-DLB-CJS, 2023 U.S. Dist. LEXIS 187030, at *6 (E.D. Ky. Oct. 18, 2023) ("Nothing in *Bruen* disturbs this holding, as *Bruen* strictly limited its application to conduct protected by the Second Amendment."); *United States v. Sturgeon*, No. 23-6-DLB-CJS-1, 2023 U.S. Dist. LEXIS 188936, at *7–8 (E.D. Ky. Oct. 20, 2023) (same); *United States v. Wilson*, No. 2:23-cr-20081-TLP-1, 2023 U.S. Dist. LEXIS 213707, at *11 (W.D. Tenn. Nov. 7, 2023)

6

("Remember, *Bruen* dealt with the *conduct* protected by the Second Amendment. It said nothing about the *types of weapons* one can possess. So the holding in *Hamblen* remains the law of the Sixth Circuit." (emphasis in original)).

Defendant attempts to argue, in part, that machineguns are not "dangerous and unusual" because there are over 740,000 registered civilian-owned machineguns in this country, which is a sufficient number to demonstrate that such weapons are "in common use." (ECF No. 22, PageID #78–81). As authority for this proposition, Defendant primarily cites Justice Alito's concurring opinion in *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016). (*Id.* at PageID #78–80). In that opinion, joined solely by Justice Thomas, Justice Alito found that Massachusetts' categorical ban of stun guns was unconstitutional, in part, because 200,000 stun guns was a sufficiently high number to qualify stun guns as "widely owned." *See Caetano*, 577 U.S. at 420 (Alito, J., concurring). In light of this reasoning, Defendant argues that the over 740,000 registered machineguns are quadruple the number of stun guns cited in *Caetano*, so the Court should likewise find that machineguns are "widely owned."

However, there are crucial facts that Defendant has overlooked. First, Justice Alito's concurring opinion is *not* binding authority. The Court is only bound by the majority opinion in *Caetano*, which did not vacate the decision below because of numerical disagreement or a finding that stun guns were "widely owned," but because the Massachusetts Supreme Court applied a standard "inconsistent with *Heller*." *See Caetano*, 577 U.S. at 411–12. The Massachusetts Supreme Court had erroneously "equat[ed] 'unusual' with 'in common use at the time of the Second Amendment's enactment.'" *Id.* Most importantly, the *Caetano* majority never addressed the issue of whether stun guns were "dangerous and unusual" or "in common use." *See id.* Second, *Caetano* concerned a weapon that was designed to be non-lethal—something that cannot be said

7

about a machinegun—and was primarily used for self-defense—a statement that is highly dubious with respect to machineguns. There was no discussion in the majority or concurring opinions concerning lethal/deadly weapons.[3] Finally, district courts have rejected this specific argument and similar references to the concurring opinion in *Caetano* concerning the prevalence of machineguns. *See, e.g.*, *United States v. Cousar*, No. 23-10004-01-EFM, 2024 U.S. Dist. LEXIS 60393, at *29–30 (D. Kan. Apr. 2, 2024); *United States v. Lane*, No. 3:23cr62 (RCY), 2023 U.S. Dist. LEXIS 155192, at *34–37 (E.D. Va. Aug. 31, 2023); *Nat'l Ass'n for Gun Rts. v. Lamont*, No. 3:22-1118 (JBA), 2023 U.S. Dist. LEXIS 134880, at *53–54 (D. Conn. Aug. 3, 2023).

The Court finds Defendant's arguments unavailing and his reliance on non-binding authority unpersuasive. The Court is instead persuaded by the overwhelming weight of authority supporting a finding that machineguns are "dangerous and unusual." After *Heller*, the Courts of Appeals have uniformly held that machineguns are dangerous, unusual, and not in common use. *See, e.g.*, *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 142 (3d Cir. 2016) ("[W]e repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *Hollis v. Lynch*, 827 F.3d 436, 449–51 (5th Cir. 2016) (holding that machineguns do not receive Second Amendment protection after determining that "[m]achineguns are dangerous and unusual and therefore not in common use"); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid. . . . The [Heller] Court took from *Miller* the rule that the Second Amendment does not authorize private

---

[3] Defendant also cites to two district court cases in New York to support his "widely owned" argument: (i) *Maloney v. Singas*, F. Supp. 3d 222 (E.D.N.Y. 2018) (concerning 64,890 nunchaku sold on the retail market from 1995 to 2018)); and (ii) *Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) (concerning 300,000 tasers owned by private citizens). (ECF No. 22, PageID #79–80). But those cases are non-binding, and again do not involve either deadly weapons or weapons remotely similar to machine guns.

persons to possess weapons such as machine guns and sawed-off shotguns that the government would not expect (or allow) citizens to bring with them when the militia is called to service."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment."); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (relying on *Heller* to determine that "the Second Amendment does not protect [the defendant's] personal possession of machine guns"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").

The Court further adopts the reasoning set forth by the district court in *United States v. Simien*, which determined that machineguns are dangerous and unusual: "Although the number of civilian-owned machineguns has increased to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use." *United States v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Tex. 2023). In fact, other courts have rejected the precise numerical argument set forth by Defendant. *United States v. Berger*, No. 5:22-cr-00033, 2024 U.S. Dist. LEXIS 20259, at *33–34 (E.D. Pa. Feb. 5, 2024) (collecting cases). Considering the statistics provided by Defendant ("741,146 machineguns possessed by Americans"), the Court finds that machineguns are "dangerous and unusual weapons," and that their possession is not covered under the plain text of the Second Amendment. *See Heller*, 554 U.S. at 627.

This determination joins the consensus among federal district courts. Since *Bruen* was decided, no district court has sustained a challenge to the constitutionality of § 922(o) under the

Second Amendment—with courts consistently finding that machineguns are not covered under the plain text of the Second Amendment. *See, e.g.*, *Lane*, 2023 U.S. Dist. LEXIS 155192, at *37–38 (collecting cases); *Berger*, 2024 U.S. Dist. LEXIS 20259, at *34 ("The defendants' arguments for protection of their machineguns fly in the face of *Heller*, *Bruen*, and every other decision that has ever addressed whether the Second Amendment protects an individual's possession of machineguns. Accordingly, the Motion to Dismiss the machinegun-related charges in the Indictment fails at step one of the *Bruen* analysis."); *United States v. Bachmann*, No. 8:23-cr-304-VMC-CPT, 2024 U.S. Dist. LEXIS 30114, at *2–7 (M.D. Fla. Feb. 22, 2024) ("It is no surprise . . . that courts have continued to hold, post-*Bruen*, that the Second Amendment protections simply do not extend to machineguns.") (collecting cases); *Cousar*, 2024 U.S. Dist. LEXIS 60393, at *31 ("The fact is, machineguns are 'dangerous and unusual' weapons and thus are not weapons 'in common use.' For that reason, this Court—following *Miller*, *Heller*, and *Bruen*—joins the vast majority of courts to hold that there is no Second Amendment right to possess a machinegun."); *United States v. Hernandez*, No. 22-122-GBW, 2024 U.S. Dist. LEXIS 38093, at *14–15 (D. Del. Mar. 5, 2024) ("This Court follows in the footsteps of other courts and finds that machine guns are 'dangerous' because they are 'likely to cause serious bodily harm' and 'unusual' because—unlike weapons commonly used in the home—machine guns can fire more than 1,000 rounds per minute. Thus, machine guns may lawfully be regulated, and Defendant's facial challenge to § 922(o) fails." (internal citations omitted)).

Because machineguns are "dangerous and unusual weapons" whose possession is not protected under the Second Amendment, Defendant's facial challenge of § 922(o) fails. *See Smith*, 2023 U.S. Dist. LEXIS 187030, at *5–6 (finding that § 922(o) regulated conduct outside the scope of the Second Amendment); *Wilson*, 2023 U.S. Dist. LEXIS 213707, at *11–12 (same); *Sturgeon*,

2023 U.S. Dist. LEXIS 188936, at *7-8 (same). Because § 922(o) regulates conduct outside of the scope of the Second Amendment, it is not necessary for the Court to engage in a step-two analysis of whether the statute is consistent with the Nation's historical tradition of firearms regulation. *See Bruen*, 597 U.S. at 24.

### B. As-Applied Challenge

Defendant's as-applied challenge fairs the same. The Defendant argues that § 922(o) is unconstitutional as applied to him because he was indicted for possession of glock switches where: (i) the glock switches were merely pieces of plastic that were not installed on any firearm; and (ii) such conduct could not be characterized as "bearing arms to terrorize the people." (ECF No. 22, PageID #82). As discussed above, there are no constitutional protections for the possession of machineguns under the Second Amendment and Defendant's "terrorize" argument is misplaced. No party disputes that the glock switches in Defendant's possession qualify as machineguns under the plain language of the relevant statute. Thus, there was no unconstitutional application of § 922(o) to Defendant.[4]

Defendant has not cited any case where a district court has found that § 922(o) was unconstitutional when it was applied to a defendant's mere possession of a glock switch. In fact, post-*Bruen*, district courts have uniformly rejected constitutional challenges to § 922(o) in cases involving possession of glock switches or similar conversion devices. *See, e.g., Cousar*, 2024 U.S.

---

[4] Defendant cannot have it both ways. An uninstalled glock switch cannot be both: (i) a piece of equipment that qualifies as "bearable Arms" and is therefore afforded full protection under the Second Amendment; and (ii) a harmless piece of plastic that is somehow still afforded protection under the Second Amendment. If an uninstalled glock switch is not considered a weapon, it would fully undermine Defendant's argument that his possession of the glock switches was conduct protected under the Second Amendment. *See United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence'). Accordingly, it can't be a 'bearable arm' protected by the Second Amendment."); *see also Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368 (D.R.I. 2022) (determining that large capacity magazines were not protected under the Second Amendment because they did not constitute weapons).

Dist. LEXIS 60393, at *28–31; *United States v. Fisher*, No. 1:23-cr-00045-MR-WCM, 2024 U.S. Dist. LEXIS 25221, at *5–7 (W.D.N.C. Feb. 13, 2024); *Lane*, 2023 U.S. Dist. LEXIS 155192, at *31–38; *United States v. Cooperman*, No. 22-CR-146, 2023 U.S. Dist. LEXIS 129007, at *5–7 (N.D. Ill. July 26, 2023); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1319-25 (M.D. Fla. 2022) (finding that definition of a machinegun under 26 U.S.C. § 5845(b) was not unconstitutional as applied to the auto sear possessed by the defendant and that § 922(o) was not unconstitutional after *Bruen*).  Accordingly, Defendant's as-applied challenge to § 922(o) fails.

V. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Indictment (ECF No. 22) is hereby **DENIED.**  The Court will reset the trial schedule in this matter in a separate Order.

**IT IS SO ORDERED.**

Date: May 20, 2024

*/s/ Charles Fleming*

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**